IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KANDY KYRIACOU and OJOMA OMAGA,

                Plaintiffs,

    v.

PERALTA COMMUNITY COLLEGE
DISTRICT, *et al.*,

                Defendants.

                                    /

No. C 08-4630 SI

**ORDER DENYING IN PART AND
GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS**

Defendants have filed a motion to dismiss plaintiffs' first amended complaint for failure to state a claim upon which relief can be granted. This motion is scheduled for hearing on April 3, 2009. Pursuant to Civil Local Rule 7-1(b), the Court determines that the motion is appropriate for resolution without oral argument, and VACATES the hearing. For the reasons discussed below, defendants' motion is DENIED in part and GRANTED in part.

    **The case management conference scheduled for April 3, 2009 remains on calendar.**

**BACKGROUND**[1]

Plaintiffs Kandy Kyriacou and Ojoma Omaga are students studying fashion design and merchandising at the College of Alameda ("the College"). Both are Christians and believe prayer is an essential part of their religion. Before the events giving rise to this action, plaintiffs took short breaks during their Apparel and Design Merchandising class to pray with each other and with other students on the balcony outside class. Additionally, Kyriacou would occasionally pray quietly and to herself

---

[1]Unless otherwise noted, the following background facts are taken from plaintiffs' complaint.

during class.

The events giving rise to this dispute began on November 1, 2007.  Kyriacou went to the office of her instructor, Sharon Bell, to discuss matters related to her class.  (Bell shared this office with other instructors.)  Eventually, their conversation turned to personal matters, and Kyriacou prayed with Bell after obtaining her consent.  On December 12, 2007, Kyriacou again went to Bell's shared office – this time to give her a Christmas gift.  Upon learning that Bell was sick, Kyriacou said that she was sorry and offered to pray for Bell.  When Bell bowed her head, Kyriacou began praying for her to get well.

While Kyriacou was praying for Bell, defendant Derek Piazza, another instructor, entered the office.  Piazza interrupted the prayer, saying, "You can't be doing that in here!" and Kyriacou ceased praying and left the office.  Kyriacou then saw Omaga in the hall and was explaining to her what had happened when Piazza reappeared and said, "You can't be doing that in there!  That's our office."  Omaga had not been in the office with Kyriacou and Bell, nor did she overhear the initial exchange with Piazza.

On December 22, 2007, both Kyriacou and Omaga received letters from defendant Kerry Compton, the Vice President of Student Services at the College.  The letters notified plaintiffs of the College's intent to suspend them from class, effective December 10, 2007.  The letters were substantially identical, and suggested that plaintiffs violated Section III.A.12 of the district's policies, which prohibit "disruptive behavior," among other things.  The letters indicated that plaintiffs had a right to respond, provided that their response was received within five days.  Neither letter provided "notice of the conduct warranting the discipline" or a "short statement of the facts (such as date, time, and location) supporting the accusation," as required by district policy.

Both Kyriacou and Omaga responded to the letters and scheduled hearings with Compton.  Compton purportedly began each hearing by asking the plaintiffs why they were there.  After their respective hearings, both plaintiffs received disciplinary letters in the mail, which warned each of them pursuant to Board Policy 4.40(B), instructed them that they "may not engage in behavior that is disruptive," and threatened disciplinary action for further violations.

Plaintiffs filed suit against defendants on October 6, 2008.  After defendants moved to dismiss the original complaint, plaintiffs filed an amended complaint ("FAC"), containing a new cause of action

United States District Court
For the Northern District of California

1    and new factual allegations.  The amended complaint contains eighteen separate claims arising under

2    42 U.S.C. § 1983 for violations of plaintiffs' rights under the United States Constitution, as well as

3    claims arising under the California Constitution.   The gravamen of plaintiffs' complaint is that

4    defendants disciplined them in violation of their First Amendment, due process, and equal protection

5    rights.  Defendants moved to dismiss plaintiffs' amended complaint pursuant to Federal Rule of Civil

6    Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  That motion is now

7    before the Court.

8

9                                            **LEGAL STANDARD**

10            Under Rule 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon

11    which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The question presented by a motion to dismiss

12    is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer

13    evidence in support of the claim.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other*

14    *grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

15            Dismissal of a complaint may be based "on the lack of a cognizable legal theory or the absence

16    of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d

17    696, 699 (9th Cir. 1990).  In answering this question, the Court must assume that the plaintiff's

18    allegations are true and must draw all reasonable inferences in the plaintiff's favor.  *See Usher v. City*

19    *of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

20            Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain

21    statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To survive

22    a Rule 12(b)(6) motion to dismiss, a plaintiff must provide "more than labels and conclusions, and a

23    formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550

24    U.S. 544, 127 S. Ct. 1955, 1964 (2007).  While the complaint does not need detailed factual allegations,

25    it must contain sufficient factual allegations "to raise a right to relief above the speculative level." *Id.* at

26    1965.

27            If the Court dismisses the complaint, it must then decide whether to grant leave to amend.  The

28    Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request

**United States District Court**
For the Northern District of California

3

United States District Court
For the Northern District of California

1  to amend the pleading was made, unless it determines that the pleading could not possibly be cured by

2  the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal

3  quotation marks omitted).

4

5                                            **DISCUSSION**[2]

6  **I.     Plaintiffs' First Amendment Free Expression and Free Exercise Claims**
        **(Causes of Action 1-3, 8, 10-12, & 17)**

7         Plaintiffs' essential First Amendment claim is that they were unjustifiably punished for engaging

8  in private, consensual, non-disruptive, student-initiated prayer. This allegation implicates both their free

9  expression and free exercise rights under the First Amendment. Defendants, by contrast, argue that it

10 would violate the Establishment Clause to allow students and teachers to pray together in faculty offices,

11 even if those prayers are student-initiated. Moreover, defendants contend that prohibiting disruptive

12 prayer in shared faculty offices constitutes a reasonable forum limitation that is essential to the

13 educational mission of the College.

14        In evaluating restrictions on prayer in public schools, the United States Supreme Court generally

15 balances the individual's right to freedom of expression of religious speech against the Establishment

16 Clause. *See, e.g.*, *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000); *Bd. of Ed. Of Westside Cmty.*

17 *Sch. v. Mergens*, 496 U.S. 226 (1990); *Wallace v. Jaffree*, 472 U.S. 38 (1985); *Widmar v. Vincent*, 454

18 U.S. 263 (1981). On the one hand, private religious expression is protected by the First Amendment.

19 *See, e.g.*, *Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 760 (1995); *see also Mergens*,

20 496 U.S. at 236, 248 (holding that a school that opens its facilities to noncurricular groups may not deny

21 access to certain groups based on the religious content of their speech); *Widmar*, 454 U.S. at 269-70,

22 277 (holding that a university policy preventing student groups from using school facilities for religious

23 worship and discussion is an unconstitutional restriction of religious expression). On the other hand,

24

25        [2]Defendants have asked the Court to treat plaintiffs' state and federal constitutional claims
26 concurrently, and plaintiffs appear to have consented to concurrent treatment of those claims. The Court
   notes that the California Constitution affords broader free speech protections than the United States
27 Constitution, and that California courts often use federal constitutional jurisprudence to interpret the
   state constitution. *See Khademi v. S. Orange County Cmty. Coll. Dist.*, 194 F. Supp. 2d 1011, 1022-23
28 (C.D. Cal. 2002). Accordingly, at this stage in the litigation, the Court will address plaintiffs' state and
   federal constitutional claims concurrently.

                                                4

where prayer appears to be sanctioned or endorsed by the school, it generally violates the Establishment Clause. *See, e.g.*, *Santa Fe Indep. Sch. Dist.*, 530 U.S. at 302 (holding student-delivered prayer at high school football games unconstitutional); *Lee v. Weisman*, 505 U.S. 577, 586-87 (1992) (holding clergy-delivered prayer at high school graduation unconstitutional); *Wallace*, 472 U.S. at 56 (holding moment of silence for "meditation or voluntary prayer" unconstitutional). Additionally, the Court has upheld reasonable content-neutral forum restrictions on protected speech in public schools, provided that those restrictions serve a legitimate government purpose and leave open adequate alternative places for speech. *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647-48 (1981). However, where restrictions are content-based, they must survive strict scrutiny. *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 642-43 (1994).

The Court finds that plaintiffs' prayer is protected expression under the First Amendment. *See Pinette*, 515 U.S. at 760. Thus, the remaining issues are: (1) whether faculty participation in student-initiated, non-disruptive, private, consensual prayer violates the Establishment Clause; and (2) whether prohibiting prayer in a faculty office constitutes a reasonable forum limitation.

### A.       Establishment Clause

Courts apply the *Lemon* test to determine whether a state action violates the Establishment Clause. The state action survives constitutional scrutiny under the *Lemon* test if: (1) it has a secular purpose; (2) it has a primary effect that neither advances nor inhibits religion; and (3) it does not foster excessive government entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971). An action violates the Establishment Clause where an "objective observer" would perceive the state action "as a state endorsement of prayer in public schools." *Santa Fe Indep. Sch. Dist.*, 530 U.S. at 308. Where prayer occurs at school-sanctioned events or in the classroom, it usually violates the Establishment Clause. *See, e.g.*, *id.* at 308-13 (holding that student-led prayer at a football game violates the Establishment Clause); *Lee*, 505 U.S. at 586-87 (holding that clergy-led prayer at a high school graduation violates the Establishment Clause); *Wallace*, 472 U.S. at 56 (holding moment of silence for "meditation or voluntary prayer" violates the Establishment Clause). However, where prayer occurs on school grounds but is student initiated and private, it typically does not violate the Establishment

United States District Court
For the Northern District of California

5

Clause and constitutes protected expression. *See, e.g.*, *Widmar*, 454 U.S. at 274-76 (holding that a student group's use of school facilities for religious worship and discussion does not violate the Establishment Clause).

Here, the issue is whether faculty participation in a student-initiated, private, consensual prayer in a faculty office violates the Establishment Clause.[3] The United States Supreme Court has not ruled on this precise issue. However, the Court's prayer-in-schools jurisprudence suggests that such activity would not run afoul of the Establishment Clause. Where prayer is public or required by school policy, the Court has generally found it unconstitutional; however, where prayer is private, consensual, and occurs outside of the classroom, the Court has generally held that it is protected expression.[4] *Compare Santa Fe Indep. Sch. Dist.*, 530 U.S. at 308-13 *and Wallace*, 472 U.S. at 56 *with Widmar*, 454 U.S. at 274-76. Plaintiffs allege that the prayer in Bell's office was private, consensual, and student-initiated, and there is no evidence that it is school-sanctioned or required. Moreover, the Court has a hard time believing that any "objective observer" would view such prayer as a state endorsement of prayer. *See Santa Fe Indep. Sch. Dist.*, 530 U.S. at 308. Accordingly, the Court finds that on the facts alleged, the prayer does not violate the Establishment Clause, and therefore constitutes protected expression under the First Amendment.

### B.      Reasonable Time, Place and Manner Restrictions

Courts uphold reasonable forum restrictions on speech in public schools where the restrictions

---

[3]The parties disagree about whether the prayer at issue in this case is disruptive. While the Court agrees that a policy restricting *disruptive* prayer in a faculty office might survive constitutional scrutiny, the Court need not reach that question at this stage. Instead, the Court must take plaintiffs' allegations as true, and therefore must accept plaintiffs' characterization of the prayer as "non-disruptive."

[4]The Court recognizes that in *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 522 (9th Cir. 1994), the Ninth Circuit found that a high school teacher violated the Establishment Clause by engaging in discussions about religious topics with his students both inside and outside the classroom. However, *Peloza* does not necessarily govern this case because it concerned a high school, and courts have noted fundamental differences between colleges and high schools when analyzing freedom of speech and expression issues. *See Coll. Republicans at San Francisco State Univ. v. Reed*, 523 F. Supp. 2d 1005, 1015 (N.D. Cal. 2007) ("[F]or purposes of First Amendment analysis there are very important differences between primary and secondary schools, on the one hand, and colleges and universities, on the other."); *see also DeJohn v. Temple Univ.*, 537 F.3d 301, 314 (3d Cir. 2008) (observing that free speech at public universities is "of critical importance because it is the lifeblood of academic freedom").

United States District Court
For the Northern District of California

1    are content-neutral, serve a legitimate government purpose, and leave open adequate alternative places

2    for speech. *Heffron*, 452 U.S. 647-48; *see also Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S.

3    503, 505 (1969) (holding that public schools may regulate speech where it "materially and substantially

4    interfere[s] with the requirements of appropriate discipline in the operation of the school") (citations

5    omitted). However, where forum restrictions are content-specific, they must survive strict scrutiny.

6    *FCC*, 512 U.S. at 642-43. That is, the restriction must be narrowly tailored to serve a compelling

7    government interest. *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

8        Defendants argue that Piazza's admonition – "You can't be doing that in here!" – constituted

9    a content-neutral forum restriction aimed at preventing disruptive speech and preserving the educational

10   mission of the College. Defendants emphasize the location, not the content: "You can't be doing that

11   *in here*!" Plaintiffs, by contrast, interpret Piazza's words differently: "You can't be doing *that* in here!"

12   For plaintiffs, it is the content, not the location, that matters. While the Court agrees that the defendants

13   may impose content-neutral restrictions on disruptive speech, at this stage in the litigation, the Court

14   must take plaintiffs' allegations as true. *See Usher*, 828 F.2d at 561. Accordingly, the Court must agree

15   with plaintiffs that defendants have imposed a content-specific restriction on religious expression to

16   which strict scrutiny applies. Defendants do not contend that their policies would, as a matter of law,

17   survive strict scrutiny. Thus, the Court cannot grant defendants' motion to dismiss on these grounds.

18

19   **II.**      **Plaintiffs' Free Association Claims (Causes of Action 4 & 13)**

20        Defendants argue that plaintiffs fail to state any facts showing that plaintiffs were prevented from

21   associating or that Omaga's association with Kyriacou was the basis for her discipline. The First

22   Amendment protects freedom of association. *Healy*, 408 U.S. at 180. With respect to religious

23   association, the government may not punish an individual for his or her religious associations unless the

24   individual is actively affiliated with a group with illegal aims and intends to further those illegal aims.

25   *United States v. Lemon*, 723 F.2d 922, 939 (D.C. Cir. 1983).

26

27

28

Plaintiffs allege that Omaga was disciplined for associating with Kyriacou.[5]  Defendants do not suggest  that plaintiffs are members of an organization with illegal aims.  Taking plaintiffs' allegations as true, which the Court must do at this stage, Omaga was punished for associating with Kyriacou, which would violate her right to free association.  *See Usher*, 828 F.2d at 561.  Thus, plaintiffs have stated a free association claim.

### III.    Plaintiffs' Prior Restraint Claims (Causes of Action 6 & 15)

Plaintiffs' prior restraint claim is that defendants have implemented an anti-prayer policy that gives defendants standardless discretion to limit expression.  Thus, plaintiffs argue, defendants have imposed an impermissible prior restraint on their expression.  Defendants respond that the College's policy is content-neutral and that plaintiffs fail to show that alternative channels to speech are closed off.

"Prior restraint" is typically used "to describe administrative and judicial order[] forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (citations and internal quotations omitted).  A prior restraint "exists when enjoyment of protected expression is contingent upon approval of government officials."  *Baby Tam & Co. v. City of Las Vegas*, 154 F.3d 1097, 1100 (9th Cir. 1998).

The Court finds that defendants' disciplinary policy does not constitute a prior restraint because it takes effect after, not before, expression occurs.  The cases plaintiffs cite to support their argument are inapposite.  In *Khademi*, the court found a prior restraint where plaintiffs were required to gain approval of the administration before engaging in protected expression on campus.  194 F. Supp. 2d at 1023.  In *Baby Tam*, the court found a prior restraint where a zoning restriction approved running an adult bookstore only in certain parts of town and did not provide for judicial review.  154 F.3d at 1100-1102.  Here, the discipline at issue occurred after protected expression took place, and the College's

---

[5]The Court remains skeptical of plaintiffs' ability to prove this allegation, particularly given that the complaint contains evidence that Omaga was not punished solely for associating with Kyriacou. *See* FAC ¶¶ 43, 46 (indicating that Omaga was accused of praying disruptively in class at her disciplinary hearing).  However, it is possible that the allegations presented to Omaga were merely a pretext aimed at concealing the actual reason for her punishment.

policies do not require administrative approval or a license before engaging in protected expression. *See Latino Officers Ass'n, New York, Inc. v. City of New York*, 196 F.3d 458, 465 (2d Cir. 1999) (distinguishing between *ex ante* restraints and *ex post* disciplinary actions).  Thus, neither the policy nor its implementation constitutes a prior restraint, and the Court dismisses plaintiffs' prior restraint claims.

**IV.     Plaintiffs' Unconstitutional Conditions Claims (Causes of Action 7 & 16)**

Plaintiffs' unconstitutional conditions claim is that defendants' policies restricting speech place unconstitutional conditions on their receipt of state benefits – specifically, the benefit of a higher education.  Defendants contend that plaintiffs were not required to give up any constitutional rights in order to receive a higher education, nor did they suffer any detriment to their right to an education.

An unconstitutional condition occurs when the government requires waiver of a constitutional right as a condition of receiving state benefits.  *United States v. Scott*, 450 F.3d 863, 866 (9th Cir. 2006).  The necessary corollary of this is that "the government may not deny a benefit to a person because he exercises a constitutional right."  *Regan v. Taxation with Representation of Wash.*, 461 U.S. 540, 545 (1983).

The Court finds that plaintiffs have failed to establish either that they suffered a detriment to their right to an education or that they were required to give up any constitutional rights as a prerequisite to receiving a higher education.  First, plaintiffs received warning letters. They were not suspended, expelled, or otherwise forbidden from going to class.  Thus, they have not yet suffered any detriment.  Second, this case is unlike any where courts have found unconstitutional conditions.  *See, e.g.*, *Speiser v. Randall*, 357 U.S. 513, 518 (1958) (finding unconstitutional condition where state law required individuals to sign a declaration disavowing any belief in overthrowing the government prior to receiving a veteran's property tax exemption); *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 402 (1984) (finding unconstitutional condition where federal statute prohibited editorializing by stations receiving grants from the Corporation for Public Broadcasting); *Legal Svcs. Corp. v. Velaquez*, 531 U.S. 533, 548-49 (2001) (finding unconstitutional condition where lawyers receiving funds from Legal Services Corporation were restricted from litigating certain types of cases).  Here, plaintiffs were not required to give up any constitutional right as a prerequisite to obtaining a higher education.  They were

9

1   not forced to disavow their religious beliefs, nor were they forced to check their right to free expression

2   at the door.  In fact, plaintiffs allege that they were allowed to pray and express their religious beliefs

3   during breaks and other non-instructional time.    Accordingly, the Court dismisses plaintiffs'

4   unconstitutional conditions claims.

5

6   **V.      Plaintiffs' Equal Protection Claims (Causes of Action 9 & 18)**

7           Plaintiffs appear to allege two equal protection claims.  Plaintiffs allege that defendants singled

8   them out for the religious content of their speech while allowing other students to exercise fully their

9   right to free speech.  Defendants assert that plaintiffs fail to allege that similarly situated students were

10  treated differently.   Plaintiffs also appear to allege that defendants have a policy prohibiting non-

11  disruptive, student-initiated prayer in faculty offices, which, on its face, violates the Equal Protection

12  Clause. Defendants contend that their policies restricting certain types of disruptive speech constitute

13  reasonable forum-based limitations aimed at furthering the educational goals of the College.  While it

14  is unclear whether plaintiffs intend to state one of these claims or both, the Court finds that plaintiffs

15  have alleged facts sufficient to sustain either claim.

16          Where a policy uniquely impacts a suspect class or implicates a fundamental right, strict scrutiny

17  applies.  *Cleburne*, 473 U.S. at 440.  Speech has long been recognized as a fundamental right secured

18  by the Constitution.  *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 336 n.1 (1995) (quoting

19  *Whitney v. California*, 274 U.S. 357, 373 (1927) (Brandeis, J., concurring) ("The right of free speech,

20  the right to teach and the right of assembly are, of course, fundamental rights.")).  In order to survive

21  strict scrutiny, a policy must be narrowly tailored to serve a compelling state interest.  *Cleburne*, 473

22  U.S. at 440.  In addition to challenging a policy on its face, plaintiffs may bring an equal protection

23  claim as a "class of one" where they allege that they were treated differently from others similarly

24  situated and the difference in treatment fails to survive constitutional scrutiny.  *Vill. of Willowbrook v.*

25  *Olech*, 528 U.S. 562, 563 (2000).  Plaintiffs' claims survive on both accounts.

26          First, plaintiffs have alleged facts sufficient to sustain a facial challenge to defendants' policies.

27  Plaintiffs allege that defendants have implemented a policy – whether unwritten, impromptu, or by

28  treating prayer as per se disruptive speech – that prohibits non-disruptive prayer in faculty offices.  For

reasons described above, such a policy does not survive strict scrutiny because it is neither narrowly tailored nor is there a compelling government interest undergirding the policy.  *See* Part I.B. *supra*.

Second, plaintiffs have alleged facts sufficient to sustain their "class of one" equal protection claim.  To support their claim, plaintiffs rely on *Williams v. Vidmar*, 367 F. Supp. 2d 1265 (N.D. Cal. 2005).  *Williams* involved a teacher who alleged that he had been forced to submit supplementary materials for pre-approval by the principal because of his religious beliefs, while other teachers were not required to obtain pre-approval.  367 F. Supp. 2d at 1270.  Here, plaintiffs' speech has been restricted due to its religious content while other students have been allowed to speak freely, regardless of the content of their speech. Like in *Williams*, plaintiffs have been treated differently due to the religious content of their speech.  Plaintiffs need not establish, as defendants suggest, that other students were allowed to pray while they were not.  Instead, plaintiffs only need to allege that they were singled out – that other students were allowed to exercise their First Amendment rights while theirs were restricted.  Plaintiffs have made such allegations. Accordingly, plaintiffs have stated an equal protection claim.

## VI.    Plaintiffs' Due Process Claims (Causes of Action 5 & 14)

Plaintiffs' due process claims raise two separate issues: (1) whether sufficient procedural protections were afforded to plaintiffs during the disciplinary process; and (2) whether defendants' policies restricting speech are unconstitutionally overbroad or vague.

### A.    Procedural Due Process

Plaintiffs allege that the procedural safeguards provided to them were insufficient because notice was inadequate and the hearings offered to them took on a "guilty until proven innocent" posture. Defendants contend that sufficient process was provided to plaintiffs.

"The Fourteenth Amendment forbids the State to deprive any person of life, liberty, or property without due process of law."  *Goss v. Lopez*, 419 U.S. 565, 572 (1975).  Protected interests are not normally created by the Constitution; rather, they are typically defined by state statutes or rules.  *Id.*

United States District Court
For the Northern District of California

In California, obtaining an education at a public school is a protected interest. *Butt v. California*, 4 Cal. 4th 668, 683, 685-86 (1992).

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  In the public school context, the Supreme Court has established a minimal standard, holding that prior to being suspended, students "must be given some kind of notice and afforded some kind of hearing."  *Goss v. Lopez*, 419 U.S. 565, 579 (1975).  More specifically, the Court found that the student must be told what he is accused of doing and what the basis of the accusation is, and must be given an opportunity to respond.  *Id.* at 582.

As an initial matter, the Court notes that plaintiffs were not suspended in this case – they were only provided with a written warning – and that the procedural safeguards due to them may be even less than the Supreme Court has required for suspensions.  In any event, the Court agrees with defendants that the minimal safeguards required under *Goss* for suspensions were provided here.  Plaintiffs were provided with written letters, which indicated which section of the disciplinary policy they were accused of violating.  Moreover, they were given hearings where defendants eventually explained the accusations and gave plaintiffs an opportunity to respond.  Plaintiffs express concern over the timing of the letters and the fact that defendants did not provide the factual basis for the allegations until the hearing.[6]  However, "[t]here need be no delay between the time 'notice' is given and the time of the hearing. In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred."  *Id.*  The only requirement is that plaintiffs be told what they are accused of and have an opportunity to respond.  *See id.*  Plaintiffs' allegations demonstrate that they were afforded these minimal safeguards.  Accordingly, the Court dismisses plaintiffs' claims that they were not provided sufficient procedural safeguards.

### B.      Overbreadth and vagueness

_____

[6]Plaintiffs also suggest that because these deficiencies departed from the College's established disciplinary policies, they constitute a due process violation.  However, neither of the cases plaintiff cites actually supports this proposition. *See Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1471 (9th Cir. 1984) ("[A] state agency's violations of its own internal rules not otherwise constitutionally required would not give rise to a due process violation." (citing *Bd. of Curators v. Horowitz*, 435 U.S. 78, 92 n.8 (1978))).

United States District Court

For the Northern District of California

Plaintiffs also argue that defendants' written policy prohibiting disruptive speech is facially unconstitutional because it is overbroad and vague, in violation of the Due Process Clause. Defendants contend that because their policies are content-neutral prohibitions on disruptive speech, they cannot be unconstitutionally overbroad or vague.

### 1.    Overbreadth

Plaintiffs argue that the written policy is overbroad because it covers too much expression that is protected by the Constitution. An enactment may be deemed unconstitutionally overbroad when "it is unconstitutional in every conceivable application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.'" *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 796 (1984). The law may only be invalidated if the overbreadth is "substantial," however. *Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987). Moreover, the Supreme Court has refused to find a law to be facially overbroad where its application can be challenged on a case-by-case basis. *See Broadrick v. Oklahoma*, 413 U.S. 601, 615-16 (1973) (holding that a law restricting the political speech of government employees was not overbroad because it could be challenged on a case-by-case basis); *see also Taxpayers for Vincent*, 466 U.S. at 800 ("[T]he mere fact that one can conceive of some impermissible applications of a law is not sufficient to render it susceptible to an overbreadth challenge."). Here, plaintiffs allege that defendants' policy is facially overbroad because it reaches too far as it was applied to them. That is not enough to demonstrate that defendants' policy is unconstitutional in every conceivable application. Thus, plaintiffs fail to allege facts sufficient to state an overbreadth claim.

### 2.    Vagueness

Plaintiffs argue that the policy is vague because they do not know how to avoid the policy's "disruptive" or "insulting" behavior. An enactment is unconstitutionally vague if a reasonable person cannot tell what speech it permits and what it prohibits. *Connolly v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926). For example, laws are unconstitutionally vague where they contain terms that are unclear and undefined. *See, e.g.*, *City of Chicago v. Morales*, 527 U.S. 41, 59-60 (1999) (holding that an anti-

loitering notice failed to give citizens clear guidelines of what is permitted and what is forbidden, in part because the definition of loitering is unclear); *Smith v. Goguen*, 415 U.S. 566, 578-79 (1974) (holding that a law forbidding "contemptuous treatment" of the flag was unconstitutionally vague because it fails to define "contemptuous treatment"). Here, defendants' policies attempt to describe what types of speech are proscribed: disruptive and insulting behavior includes "willful disobedience," "habitual profanity or vulgarity," and "open and persistent defiance of the authority of . . . college employees." *See* FAC, Ex. A at 6. However, plaintiffs allege that the policy covers much more behavior than it describes, rendering it unconstitutionally vague. For example, plaintiffs appear to allege that the policy treats prayer as per se disruptive speech. Taking those allegations as true – as it must at this stage in the litigation – the Court finds that plaintiffs have alleged facts sufficient to state a claim for unconstitutional vagueness. Accordingly, the Court denies defendants' motion to dismiss plaintiffs claim for unconstitutional vagueness.

## CONCLUSION

For all of the foregoing reasons, the Court hereby DENIES defendants' motion to dismiss plaintiffs' First Amendment freedom of association, freedom of expression and free exercise claims (Causes of Action 1-4, 8, 10-13, 17) as well as plaintiffs' equal protection and unconstitutional vagueness claims (Causes of Action 4, 9, 14 & 18), and the Court GRANTS defendants' motion to dismiss plaintiffs' prior restraint, unconstitutional conditions, overbreadth, and procedural due process claims (Causes of Action 5-7 & 14-16).

## IT IS SO ORDERED.

Dated:  March 31, 2009

_____
SUSAN ILLSTON
United States District Judge